IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Franklin Delano Conrad, II, | Civil Action No. 2:15-1722-RMG |
| Plaintiff, | |
| v. | ORDER AND OPINION |
| United States of America, | |
| Defendant. | |

This matter is before the Court on Defendant's renewed motion to dismiss for lack of subject matter jurisdiction based on the discretionary function exception to the Federal Tort Claims Act ("FTCA"). (Dkt. No. 61.) For the reasons set forth below, the Court denies Defendant's renewed motion to dismiss.

I.  **Facts**

Plaintiff, an agent with the South Carolina Law Enforcement Division, participated in a maritime tactical operations training program ("MTOTP") conducted at the Federal Law Enforcement Training Center ("FLETC") in North Charleston, South Carolina in August 2012. The purpose of the MTOTP was to train students on tactical boarding procedures for "High Interest/High Threat Vessels." (Dkt. No. 21 at 2.)

On August 22, 2012, the third day of the four and one half day program, the program called for students to climb the exterior of a 29-foot high structure[1] using a lightweight flexible ladder used to board ships. (*Id.*) Participants were to complete three climbs, the first solo[2] without tactical gear, the second solo in full tactical gear, and the third in full tactical gear with

---

[1] The structure consisted of three standard shipping containers stacked on top of each other. (Dkt. No. 21-3 at 20.)

[2] A student completed a climb "solo" if s/he was alone on the ladder.

multiple students on the ladder. (Dkt. No. 21-3 at 9.) Plaintiff was attempting his second climb in full tactical gear when, at about 22 feet high, he struggled, lost his grip, and fell.

The safety strap used in the program did not have an automatic fall arrest mechanism; participants had to manually clip the safety strap to the ladder when they needed to rest. Plaintiff had clipped his safety strap to the ladder twice during the climb when he became fatigued but did not clip in prior to losing his grip and falling. (Dkt. No. 21 at 2-3.) Although the program designers had positioned a high jump mat at the base of the building to catch participants who might fall, when Plaintiff fell, his body landed on only a portion of the mat and rolled off and onto the ground. Plaintiff was initially unconscious for 3-5 minutes following the fall and was tended to by emergency medical personnel. He was then transferred to MUSC Hospital for treatment. (Dkt. No. 21-3 at 8, 13, 18, 19, 20).

Following this incident, the Site Director of the FLETC facility requested a Training Accident Investigation Team ("TAIT") initiate a formal investigation into the circumstances leading to Plaintiff's fall and the effectiveness of the safety methods that had been utilized in the MTOTP. The report found that the program's hazard avoidance procedures and measures were deficient for their failure to include "an automatic fall arrest mechanism . . . that required no student deployment" and a high jump mat system that was "suitable to handle a fall." The report concluded that "[t]here was limited and inadequate testing and evaluation done when determining the . . . safety mitigation for this area of training." (Dkt. No. 21-3 at 4, 5, 17, 18, 20, 23).

## II. Legal Standard

### A. Subject Matter Jurisdiction

A Defendant may challenge subject matter jurisdiction by contending 1) that the complaint fails to allege facts sufficient to establish subject matter jurisdiction or 2) "that the

jurisdictional allegations of the complaint [are] not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the Defendant challenges the sufficiency of the jurisdictional allegations on the face of the complaint, Plaintiff receives the same procedural protections afforded under Rule 12(b)(6): "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (2009). If, however "the defendant challenges the factual predicate of subject matter jurisdiction," a district court may hold an evidentiary hearing to consider the relevant facts. *Id.* In that case, Plaintiff's allegations are not presumed to be truthful, and the district court may "decide disputed issues of fact with respect to subject matter jurisdiction." *Id.*

When, upon considering a motion to dismiss, a Court finds that "the jurisdictional facts and the facts central to a tort claim are inextricably intertwined," Defendant has indirectly challenged Plaintiff's claims on the merits. *Id.* at 193. When that is the case, "the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Id.* This procedure promotes judicial economy, ensures that Plaintiff's allegations benefit from the presumption of truthfulness, and grants Plaintiff the "procedural safeguards – such as discovery – that would apply" if Plaintiff faced a direct challenge on the merits. *Id.*

### B.     Discretionary Function Exception to the Federal Tort Claims Act

The FTCA authorizes lawsuits against the United States for wrongful acts or omissions of federal employees acting within the scope of their office in circumstances where a private person would be liable for similar claims in the jurisdiction where the claim arose. 28 U.S.C. § 1346(b). Under the FTCA, the Government cannot be held liable for actions that fall within its discretionary function, an exception based on the premise that the judiciary should not "second guess" policy choices of the Executive Branch through private litigation. 28 U.S.C. § 2680(a); *Berkovitz v. United States,* 486 U.S. 531, 536-37 (1988).

-3-

A claim falls within the discretionary function exception if two elements are satisfied:

1. The challenged conduct was the product of a discretionary decision in which the governmental conduct was a matter of judgment or choice. However, if law or policy mandated a particular course of action, the discretionary function exception does not apply. *Berkovits*, 486 U.S. at 536 ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive.")

2. The decision was 'based on considerations of public policy." This second prong limits the discretionary function exception to the kinds of judgments the exception "was designed to shield." *Id.* at 536-37.

When the Government asserts that a claim is barred by the discretionary function exception, the burden is on the Plaintiff to demonstrate that the Court has subject matter jurisdiction because the discretionary function exception does not apply. All waivers of sovereign immunity should be "strictly construed" in favor of the Government. *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). The Court may go outside the Complaint and consider other evidence without converting the matter to a motion for summary judgment. *Adams*, 697 F.2d at 1219.

## III. Discussion

The Government filed its first motion to dismiss on October 20, 2015, asserting that this Court lacks subject matter jurisdiction because the governmental acts/omissions alleged in the Complaint fall within the FTCA's discretionary function exception. (Dkt. No. 16.) The Government represented in that motion that "there are no mandatory statutes, regulations or policies that are specific and mandatory in regard to the designing and conduct of this law enforcement training class." (Dkt. No. 16 at 8.)

Later, in its Reply brief, the Government hedged, arguing that "no mandatory directives were applicable to the *decisions* regarding risk evaluations and mitigation methods" but that the "steps in the *required procedures* were followed." ((Dkt. No. 22 at 1-2) (emphasis added).) The Government conceded that certain procedures were mandatory with regard to risk assessment and mitigation but maintained that the "particular result" that resulted from following those procedures fall within the discretionary function exception. (*Id.*) As for which procedures were required, the Government acknowledged that two FLETC manuals and one FLETC standard operating procedure "cumulatively prescribe procedures to be followed in risk management for training activities," including "(1) FLETC Manual 93-01 – Training Management and Training Resources Coordination ("Manual 93-01"); (2) Standard Operating Procedure CHS-CHT/TMG-074 –Risk Assessment Process for Training Programs ("SOP 074"); and (3) FLETC Manual 70-09 – Safety Program ("Manual 70-09")." (*Id.*)

Based on these representations, this Court found that the discretionary function exception did not apply because Plaintiff had shown by a preponderance of the evidence that (1) Annex L to Manual 70-09 mandated certain risk mitigation procedures for designers of training programs and (2) the Government failed to perform the testing and evaluation portion of those procedures. (Dkt. No. 38 at 5-6.) Defendant's first motion to dismiss was therefore denied.

The Government has now filed a renewed motion to dismiss, arguing that the procedures outlined in Annex L to Manual 70-09 apply only to employee job hazard assessments and do not apply to the MTOTP.[3] Instead, the Government asserts that under SOP 074, the Maritime and General Training Division Lesson Plans include a Risk Analysis and Training Risk Calculation Worksheet to address potential hazards students might be exposed to during training programs

---

[3] The Government does not argue that it complied with the procedures in Annex L, only that they did not apply.

like the MTOTP. (Dkt. No. 61-1 at 5.) SOP 074 includes both the Training Risk Calculation Worksheet and the FLETC Detailed Risk Analysis Worksheet. (Dkt. No. 21-6.)

Viewing the facts in a light most favorable to Plaintiff as the non-moving party, this Court finds that there is a factual dispute about which manual, policy, or procedure was mandatory regarding safety risk assessment and mitigation for the MTOTP. Not only has the Government previously stated that Manual 70-09 prescribes the procedures to be followed when developing a training program, but the Government had made admissions in response to requests to admit which, read in a light most favorable to Plaintiff, support the view that the particular section of Annex L that this court cited in its Order denying defendant's first motion to dismiss was mandatory. (Dkt. No. 63 at 5.) The Government has also admitted that some "elements" of Annex L apply to the MTOTP but insists that the language suggests that other elements do not apply. (Dkt. No. 64 at 2-3.) Further Annex L states that it applies to entities besides employees, such as students and guests at training locations. (Dkt. No. 16-1 at 99.) Finally, SOP 074, the procedure that the Government now argues is controlling, explicitly lists Manual 70-09 with Annex L as a reference. (Dkt. No. 21-6 at 2.) The Government has not provided any support for its argument that Manual 70-09 is only referenced in SOP 074 "for context." (Dkt. No. 64 at 4.) For these reasons, the Court is unable to determine, based on the facts and pleadings available, whether Manual 70-09, SOP 074, both, or part of each applies to the MTOTP.

This undecided jurisdictional fact is "inextricably intertwined" with the facts central to the merits of this tort claim. The cause of action in an FTCA case is derived from state law, and "[a]n action under the FTCA may only be maintained if the Government would be liable as an individual under the law of the state where the negligent act occurred." 28 U.S.C. 1346(b)(1). To assert a negligence claim in South Carolina, "a plaintiff must show that (1) defendant owed her a

duty of care; (2) defendant breached this duty by a negligent act or omission; (3) defendant's breach was the proximate cause of her injuries; and (4) she suffered injury or damages." *Dorrell v. S.C. DOT,* 361 S.C. 312, 318 (S.C. 2004). To determine whether the Government owed Plaintiff a duty of care and, if so, whether Defendant breached that duty, this Court must determine which safety policies and procedures applied to the MTOTP. *See Madison ex rel. Bryant v. Babcock Ctr., Inc.,* 638 S.E.2d 650, 659 (S.C. 2006) ("The standard of care in a given case may be established and defined by the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines."); *Peterson v. Natl. R.R. Passenger Corp.,* 618 S.E.2d 903, 906 (S.C. 2005) (railroad's deviation from own internal policies was admissible as evidence they deviated from standard of care, and breached duty owed to plaintiff, in lawsuit brought by plaintiff injured in train derailment); *Tidwell v. Columbia Ry., Gas & Elec. Co.,* 95 S.E. 109 (S.C. 1918) (defendant's own rules are admissible in evidence in a personal injury action regardless of whether rules were intended primarily for employee guidance, public safety, or both, because violation of such rules may constitute evidence of a breach of the duty of care and the proximate cause of injury).

## IV.    Conclusion

Because this Court's ruling on Defendant's renewed motion to dismiss turns on a jurisdictional fact (which policy or policies apply to MTOTP) that is inextricably intertwined with the merits of this negligence case (the standard of care), dismissal under 12(b)(1) is inappropriate. This Court will assume jurisdiction and proceed "to the intertwined merits issue." *Kerns,* 585 F.3d at 193. This Court could proceed to an evidentiary hearing to determine the jurisdictional facts but, in the interest of judicial economy, will not hold an evidentiary hearing less than one month before a bench trial on a motion filed just after the Court set the date for the

bench trial.[4] For the foregoing reasons, the Court **DENIES** Defendant's renewed motion to dismiss. (Dkt. No. 61).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

March 22, 2017
Charleston, South Carolina

---

[4] Defendant filed this motion on February 21, 2017, one week after the Court scheduled a bench trial to begin on April 4, 2017.